COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Friedman and Lorish
Argued at Alexandria, Virginia


HENRI MAURICIO PEREZ FLORES

v.          Record No. 1110-23-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE LISA M. LORISH
OCTOBER 1, 2024

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark,[1] Judge

Samantha Offutt Thames, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

William K. Hamilton, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Henri Mauricio Perez Flores was pulled over for driving without his two red tail lights

illuminated.  Perez Flores argues that evidence that led to his arrest for driving while intoxicated

(DWI) should have been suppressed pursuant to the statutory exclusionary rule in Code

§ 46.2-1013(B).  The general district court agreed, but granted the Commonwealth's motion to

nolle pros.  Perez Flores argues that res judicata barred his subsequent indictment in the circuit

court, but we conclude that neither the general district court's ruling on the motion to suppress

nor the grant of the motion to nolle pros were final judgments on the merits triggering preclusive

effects.

Perez Flores then argues that the circuit court erred by not suppressing the evidence.

Perez Flores relies on the statutory exclusion in Code § 46.2-1013(B), which applies only to

---

[1] Judge Kathleen M. Uston presided over the suppression motion hearing.  Judge James
C. Clark presided over the trial and motion to set aside the verdict.

violations of that "subsection." That subsection requires vehicles to have a rear white light that can illuminate the license plate. The parties agree, however, that Perez Flores was stopped for a red tail light violation, governed by subsection A of Code § 46.2-1013. This subsection requires vehicles to have two red rear tail lights and has no exclusionary rule. While a different statute, Code § 46.2-1030, governs when a vehicle's lights must be illuminated, and contains an exclusionary rule that applies to any violations of that *section*, the parties agree that only the application of Code § 46.2-1013(B)'s exclusionary rule is before us in this appeal. Because no exclusionary remedy applies when a law enforcement officer stops a vehicle for a suspected violation of Code § 46.2-1013(A), we affirm the trial court.

### BACKGROUND[2]

Officer Benjamin Walsh saw a vehicle driving late at night, in the dark, without illuminated tail lights. He stopped the vehicle and identified Perez Flores as the driver. Perez Flores was charged with DWI based on evidence that Walsh observed after stopping him. Walsh did not observe any erratic driving behavior before the stop and testified that he stopped Perez Flores only because his tail lights were off.

In the general district court, Perez Flores moved to suppress the evidence obtained from the traffic stop. After the court granted the pretrial motion, the Commonwealth moved to nolle prosequi the charges. The district court granted the Commonwealth's motion over Perez Flores's objection.

The Commonwealth then indicted Perez Flores in the circuit court. Perez Flores again moved to suppress the evidence obtained during the traffic stop, arguing that the stop was unlawful under the recently-amended Code § 46.2-1013. The circuit court denied that motion.

---

[2] The relevant facts are not in dispute.

- 2 -

Following trial, the jury convicted Perez Flores of DWI with a BAC between 0.15 and 0.20. Perez Flores moved to set aside the verdict, arguing that the district court's earlier dismissal precluded prosecution under the doctrine of res judicata. The circuit court denied that motion. Perez Flores appeals.

ANALYSIS

We begin with Perez Flores's argument that the trial court erred by refusing the motion to set aside the verdict because his direct indictment was barred under res judicata. Then, concluding that the direct indictment was not barred, we take up the suppression argument on its merits.

I. Res judicata prevents parties from relitigating a claim in the circuit court if the district court issued a final decision on the merits of the criminal charge.

Res judicata "precludes relitigation of a claim or issue once a final determination on the merits has been reached by a court of competent jurisdiction." *Neff v. Commonwealth*, 39 Va. App. 13, 18 (2002). We apply res judicata to a pretrial dismissal of a criminal charge when that dismissal constitutes a decision "on the merits." *Highsmith v. Commonwealth*, 25 Va. App. 434, 441-42 (1997).[3] The party asserting res judicata bears the burden of proof by a preponderance of the evidence. *Neff*, 39 Va. App. at 18. We review the circuit court's legal conclusions de novo. *Id.* at 16.

The question here is whether the district court's order granting the Commonwealth's pretrial motion to nolle pros the DWI charge was a judgment on the merits. "A dismissal of a cause of action may constitute a judgment on the merits depending upon the grounds upon which such

---

[3] *Highsmith* articulated res judicata elements that applied "[p]rior to the [2006] adoption of Rule 1:6." *Caperton v. A.T. Massey Coal Co.*, 285 Va. 537, 549 (2013). Nonetheless, the requirement that a final judgment be rendered "on the merits" remains an element of claim preclusion—the type of res judicata implicated here. *Lane v. Bayview Loan Servicing, LLC*, 297 Va. 645, 654 (2019).

dismissal is based." *Highsmith*, 25 Va. App. at 440. "A judgment of dismissal which is intended to be and is a disposition on the merits of a claim is a final judgment on the merits." *Id.* But a nolle pros is not a dismissal. A nolle prosequi dismisses the action "without a determination of guilt." *Commonwealth v. Jackson*, 255 Va. 552, 556 (1998). In this way, a nolle pros is a mere "discontinuance" of the action, which, "if entered before jeopardy attached, does not act as an acquittal and does not bar further prosecution for the offense." *Cantrell v. Commonwealth*, 7 Va. App. 269, 280-82 (1988) (quoting *State v. Cain*, 289 S.E.2d 488, 490 (W. Va. 1982)).[4]

The fact that the district court heard evidence and granted the motion to suppress before granting the motion to nolle pros does not change the outcome. Perez Flores argues that our prior decision in *Neff* suggests that when witnesses are sworn, evidence is heard, and a district court grants a motion to suppress, the court's decision is a final judgment on the merits. But the issue in *Neff* was whether a *dismissal* following the failure to present any evidence was a judgment on the merits. 39 Va. App. at 15. There, we said that "because no witnesses were sworn or evidence taken, the general district court's dismissal of the DUI . . . following the Commonwealth's refusal to present any evidence, did not constitute a final judgment on the merits." *Id.* at 20. As a result, the dismissal "amounted to no more than the assent of the [court] to a cessation of the proceedings, without any examination whatever of the cause upon its merits. It was *the equivalent* of a *nolle prosequi*—nothing more." *Id.* (emphasis added). Whether evidence was presented may change the nature of a dismissal, but does nothing to modify our longstanding caselaw about the effect of a nolle pros.

For two other reasons, the district court's hearing of evidence before granting the motion to suppress does not transform the court's decision into a final judgment on the merits. First, as the

---

[4] Because Perez Flores has not argued that jeopardy attached in the general district court and raised a double jeopardy challenge, we limit our discussion to the impact of a nolle pros entered before jeopardy attaches.

circuit court noted, the district court's suppression of evidence resulting from the traffic stop did not necessarily prevent the Commonwealth from proceeding to trial with other competent evidence.[5] In other words, a decision to grant a motion to suppress is not a complete disposition of the merits of the claim against the defendant. Second, Code § 19.2-60 reinforces this conclusion by stating that if a motion to suppress "is granted by a court not of record . . . the ruling shall have no effect on any hearing or trial in a court of record." A general district court is a court "not of record." *See* Code §§ 16.1-69.1 to 16.1-69.58 (referring to "district courts" as a type of "court[] not of record"). Res judicata is a "judicially created doctrine," *Commonwealth v. Johnson*, 7 Va. App. 614, 617 (1989), founded on "considerations of public policy," *Bates v. Devers*, 214 Va. 667, 670 (1974). Thus, even if the district court's decision on the motion to suppress could be considered final under general res judicata principles, the General Assembly sets the jurisdiction of general district courts and is entitled to weigh any public policy concerns implicated in deciding not to give final and binding effect to decisions of that court.

For all these reasons, we conclude the circuit court did not err in refusing to set aside the verdict.

## II. The statutory exclusionary rule in subsection B of the tail light statute, Code § 46.2-1013(B), applies only to violations of that subsection.

The suppression issue presents a purely legal question. The parties agree that Perez Flores was stopped only because he was driving at night and the law enforcement officer could not see his red tail lights[6] and that this violated Code § 46.2-1013(A). The only issue on appeal is whether the statutory exclusionary rule in Code § 46.2-1013(B) applies to such a violation. In reviewing the circuit court's decision on the suppression hearing, "[w]e give deference to the

---

[5] As the Commonwealth observed at oral argument, a contrary result would effectively insulate a district court's ruling on a motion to suppress from appellate review.

[6] Red tail lights are distinguishable from brake lights, required by Code § 46.2-1014.

trial court's factual findings," but "review de novo the application of law to those facts." *Carlson v. Commonwealth*, 69 Va. App. 749, 758 (2019). We also interpret the statute de novo. *Focke v. Commonwealth*, 77 Va. App. 366, 372 (2023).

Code § 46.2-1013(A) requires that every motor vehicle "carry at the rear two red lights plainly visible in clear weather from a distance of 500 feet to the rear of such vehicle." Code § 46.2-1013(B) states:

> All tail lights required pursuant to subsection A shall be constructed and so mounted in their relation to the rear license plate as to illuminate the license plate with a white light so that the same may be read from a distance of 50 feet to the rear of such vehicle. Alternatively, a separate white light shall be so mounted as to illuminate the rear license plate from a distance of 50 feet to the rear of such vehicle. No evidence discovered or obtained as to the result of a stop in violation of this subsection, including evidence discovered or obtained with the operator's consent, shall be admissible in any trial, hearing, or other proceeding.

Subsection C then requires all tail lights or white lights to be of an approved type, and subsection D regulates tail lights installed on boat trailers. Code § 46.2-1013(C), (D).

"The 'primary objective of statutory construction is to ascertain and give effect to legislative intent.'" *Grethen v. Robinson*, 294 Va. 392, 397 (2017) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459 (1983)). We determine that intent "from the plain meaning of the language used." *Street v. Commonwealth*, 75 Va. App. 298, 306 (2022) (quoting *Hillman v. Commonwealth*, 68 Va. App. 585, 592-93 (2018)). We evaluate statutory language in the context "of the entire statute" because "it is our duty to interpret the several parts of a statute as a consistent and harmonious whole." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (quoting *Eberhardt v. Fairfax Cnty. Emps' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194-95 (2012)). We "will not consider any portion [of a statute] meaningless unless absolutely necessary." *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 14 (2019) (quoting *Logan v. City Council*, 275 Va. 483, 493 (2008)).

- 6 -

Perez Flores argues that the plain language of the statute requires the evidence in his case to be suppressed. According to Perez Flores, subsection A merely requires a vehicle to have rear red lights without requiring them to be illuminated. Perez Flores argues the illumination requirement comes from subsection B, which "expressly applies to all such required taillights from subsection A" and "mandates that such lights are illuminated in a particular manner." Thus, a failure to illuminate the red rear lights described in subsection A is actually a violation of subsection B, which triggers the exclusionary rule.

The plain text of the statute suggests otherwise. Subsection A requires a vehicle to carry two red rear lights so that it will be visible to other drivers, and this is distinct from the requirement in subsection B that a vehicle have a white light to illuminate the license plate. At core, subsection A is about visibility of the vehicle, and subsection B is about visibility of the license plate. While subsection B references the "tail lights required pursuant to subsection A," it only does so to set out the two options for how the white light can be mounted to display the license plate. Code § 46.2-1013(B). The white light may be a part of the red tail light system required by subsection A, or a "separate white light" can be mounted to illuminate the rear license plate. *Id.* The distinction between the two subsections is underscored by the separate distance requirements. The red tail lights must be visible, in clear weather, from 500 feet away. Code § 46.2-1013(A). But the white license plate light must only make the license plate visible from a distance of 50 feet. Code § 46.2-1013(B). Subsection B, then, while referencing the red tail lights of subsection A, does not require those lights to be illuminated.

Instead, a different statute, Code § 46.2-1030(A), sets out requirements for when the "illuminating devices" required by Article 3 must be lighted. As illuminating devices under Article 3, tail lights must be on "from sunset to sunrise," and when there is bad weather or reduced visibility. *Id.* This statute also contains an exclusionary rule:

> No law-enforcement officer shall stop a motor vehicle for a violation of this section, except that a law-enforcement officer may stop a vehicle if it displays no lighted headlights during the time periods set forth in subsection A. No evidence discovered or obtained as the result of a stop in violation of this subsection, including evidence discovered or obtained with the operator's consent, shall be admissible in any trial, hearing, or other proceeding.

Code § 46.2-1030(F). Notably, this exclusionary rule applies to any stop in "violation of this section." *Id.*

The issue raised in this appeal, however, is not whether the exclusionary rule in Code § 46.2-1030(F) should have applied to prevent the evidence from being admitted at trial. As Perez Flores admits, the "parties at trial agreed that Virginia Code § 46.2-1013 controlled in this case." The relevant assignment of error likewise argues that the "trial court erred in denying Mr. [Perez] Flores's motion to suppress the evidence, as the police stop was invalid under Virginia Code § 46.2-1013," and the parties reaffirmed the limited scope of this appeal during oral argument. Because "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice," Rule 5A:18, we do not attempt to interpret Code § 46.2-1030(F) here.

Returning to the exclusionary rule in Code § 46.2-1013(B), we find that it only applies to violations of that subsection—that is, it applies only to evidence obtained from a traffic stop made solely for a violation of the white license plate light requirement. Subsection B's exclusionary rule is one of 19 similar amendments the General Assembly made in 2020 to limit the number of traffic stops made by law enforcement officers. 2020 Acts Spec. Sess. I. chs. 45, 51. In many of the amended statutes, like in Code § 46.2-1030(F) mentioned above, law enforcement are precluded from "stop[ping] a motor vehicle for a violation of this *section*," and evidence derived from such a stop is subject to an exclusionary rule. *See, e.g.*, Code

§§ 46.2-334.01(F), -923(C), -926(B), -1003(C) (emphasis added).  Subsection B's exclusionary rule, by contrast, applies to "a stop in violation of this *subsection*."  Code § 46.2-1013(B) (emphasis added).  "We must presume that the General Assembly chose, with care, the words that appear in a statute."  *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (quoting *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016)).  "[W]hen the General Assembly uses two different terms in the same act, it is presumed to mean two different things."  *Turner v. Commonwealth*, 295 Va. 104, 110 (2018).  Exclusionary rules are intended to deter police conduct.  The General Assembly's placement of the exclusionary rule in this statute shows an intent to deter traffic stops based on the lack of a white license plate light, but not on the failure to have two red tail lights, a clear safety concern.  Therefore, we cannot say the trial court erred in failing to apply the exclusionary rule in Code § 46.2-1013(B) to suppress evidence derived from a traffic stop for a violation of Code § 46.2-1013(A).

                                        CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

                                                                            *Affirmed.*